Noah DAWSON

v.

CITY OF AMARILLO.

No. 7100.

Court of Civil Appeals of Texas.

Amarillo.

Feb. 26, 1962.

Rehearing Denied April 2, 1962.

Monning & Monning, Amarillo, for appellant.

Gibson, Ochsner, Harlan, Kinney & Morris, Amarillo, for appellee.

DENTON, Chief Justice.

This suit was instituted by Noah Dawson, a former employee of the City of Amarillo, seeking reinstatement to his former position and for back wages since his release. Upon a trial before the court, judgment was entered denying Dawson the relief prayed for. No findings of fact or conclusions of law were requested or filed.

On April 4, 1955 Dawson was employed by the City and was assigned to work in the park department as a laborer. His designation was later changed to "gardener-helper," however, the personnel director testified this did not constitute a promotion but rather a change in job classification. His employment was terminated on September 30, 1956.

■ The basic question to be determined is whether or not Dawson ever attained a classified status under the Civil Service ordinance of the City. Once a city employee becomes a classified or permanent employee he is entitled to certain rights under Civil Service in addition to retirement benefits, and can be discharged only for cause as specifically set out in the ordinance and Personnel Rules of the City. On the other hand, if Dawson had not attained classified status he would not be entitled to the benefits of Civil Service and could be discharged by the department head without cause. It is Dawson's contention that in as much as he was admittedly employed for a longer period than six months, he automatically became a classified employee thereby coming under the City's Civil Service program.

Subsequent to the legislature's enactment of Article 1269m, V.A.C.S. in 1947, referred to as the Firemen's and Policemen's Civil Service Act, the City of Amarillo enacted a Civil Service ordinance for certain other employees in addition to adopting the State statute for firemen and policemen. The ordinance established a Civil Service Commission with the authority to make the necessary rules and regulations and to administer the Civil Service program. Personnel rules were then put into effect for the purpose of supplementing the Civil Service ordinance.

Appellant assigns eleven points of error. However, the first five points appear to be decisive as they go to the basic question to be determined. These points in effect complain of the trial court's judgment holding Dawson did not become a classified employee and entitled to the benefits and protection of Civil Service. If the trial court was correct, such questions as the jurisdiction of the Civil Service Commission; appellant's vested right in the particular job; statute of limitation or laches, will become immaterial to this decision.

In order to determine this basic question we must look to facts surrounding Dawson's employment, and the pertinent provisions of the Civil Service ordinance and the City's Personnel Rules. When Dawson began his employment a "certification record" was prepared. It shows he began his employment with the City on April 4, 1955 and was employed as a "Laborer I" on a "seasonal basis." This record further reveals his job status was "Number 4." The City's system of classifying all city jobs was as follows: Number 1: for permanent employees; Number 2: for probationary employees; Number 3: for temporary employees; Number 4: for seasonal or special assignments. It is uncontradicted that Dawson's job status remained Number 4 throughout the period of his employment with the City.

On December 15, 1955 the head of the Parks and Recreation Department wrote Dawson a letter informing him he could not become a permanent employee under the City's Civil Service rules, and advised him that his employment would be terminated not later than September 30, 1956. This same department head again wrote Dawson on August 15, 1956 explaining in more detail that the City could not accept Dawson as a permanent employee because of the fact he was over the age of 50 years at the time he was initially employed, and for this reason could not be brought under the City's retirement program. For some reason which is not clear from the record, Dawson met with the Civil Service Commission on September 11, 1956 and was notified by the Personnel Director by letter dated September 20, 1956 that the Commission was unable to find an exception to the requirement concerning the employment of seasonal employees over the age of 50 years.

Dawson's employment was thus terminated on September 30, 1956.

The City Charter, the Civil Service ordinance, and the Personnel Rules provide for "classified" and "unclassified" service of the City. Only jobs designated as classified service come under Civil Service. All three instruments named above used almost the exact language to describe these classifications. Section 9 of the Personnel Rules reads as follows:

"SECTION 9. 'Classified Service' and 'Unclassified Service.'

"The positions in the City of Amarillo shall be separated into the unclassified service and the classified service.

"(1) The unclassified service shall comprise the following offices and positions:

"a. incumbent of elective positions.

"b. the City Manager

"c. the City Secretary

"d. Heads of the Departments

"e. the City Judge and Clerks of the City Court.

"f. members of Boards and Commissions in the City's service.

"g. persons employed to make or conduct a special inquiry, investigation, examination, or installation, if the City Commission or the City Manager certifies that such employment is temporary, and that the work should not be performed by employees in the classified service.

"(2) The classified service shall comprise all positions not specifically included by this section in the unclassified service."

The City personnel director testified seasonal employees were originally employed under Sec. 85 of the Personnel Rules. This section is designated "Special Assignments" and reads as follows:

"SECTION 85. Special Assignments. None of the provisions of the Civil Service Ordinance or of these rules shall bar the City from making contracts for technical and/or specialized personnel to carry out work of a special nature. Such special assignments shall be for work which is not a regular part of the administration of City affairs, whether such work is for a longer period than three (3) months or periodic in its nature."

On or about June 15, 1955 shortly after Dawson began his employment, Sec. 84a was added to these same rules. The material portion of this new section reads as follows:

"Section 84a: 'Seasonal Appointment.' Seasonal Appointment may be made for a maximum period of nine (9) months within a fiscal year. Seasonal Appointments are for a period of time such as to complete a special piece of work, as School Patrol, summer program employment in the Park and Recreation Department, and for vacation replacement; or on projects that exceed the ninety (90) days allowed for Temporary Appointment, but in no case will Seasonal Appointment exceed nine (9) months in the City's fiscal year. After adoption of this amendment no employee on seasonal appointment may be transferred into any department of the City and his assignment be made retroactive to the beginning of his seasonal appointment. At the time of transfer into probationary status, the employee must serve a six (6) months probationary period before he can become a permanent employee and enjoy full Civil Service Status."

It is noted that both Sections 85 and 84a are placed under "Rule XIII," "Temporary Appointments." We think this is significant.

The cases relied on by the appellant are cases interpreting Art. 1269m which deal expressly with the Firemen's and Police-

men's Civil Service. These cases are not controlling in the instant case. This act of the legislature which was adopted by the City of Amarillo is applicable only to firemen and policemen. It does not apply to other city employees. This latter group of employees must come under the City's Civil Service ordinance and personnel rules.

■ It is well settled that the same rules of construction apply to municipal ordinances as apply to statutes. Reed v. City of Waco (Tex.Civ.App.) 223 S.W.2d 247 (writ refused); Town of Port Acres v. City of Port Arthur (Tex.Civ.App.) 340 S.W.2d 325 (refused N.R.E.). We must therefore look to the pertinent Civil Service provisions to determine the intent of the City Commission in determining Dawson's rights thereunder.

Obviously all city employees are not and cannot be considered to be in the classified service. Many positions are specifically eliminated. Dawson was employed under Sec. 85 of the Personnel Rules designated "Special Assignment." His employment record showed him to be a "seasonal" employee and he remained a gardener-helper with a job class of Number 4 throughout the period of employment. Section 44 of the Personnel Rules provides that the maximum age for entrance into the Civil Service is 50 years of age for all persons other than firemen and policemen. In the latter two categories the maximum age is 35 years. It is undisputed that Dawson was 52 years of age at the time he was originally employed by the City.

Art. IV, Sec. 3 of the Civil Service ordinance provides that the Civil Service Commission "shall make provisions for open, competitive and free examinations for applicants meeting requirements as prescribed in rules and regulations of the Civil Service Commission." This requirement was supplemented by Rule IX of the Personnel Rules which requires a written and oral examination. The record shows Dawson was given only a physical examination prior to his entering this employment. One of

the few Texas cases dealing with City Civil Service ordinances other than those involving firemen and policemen is Holcombe v. Levy (Tex.Civ.App.) 301 S.W.2d 507 (refused n. r. e.). The question there was whether a corporation judge was a classified Civil Service employee protected against summary removal by the mayor. The court, in deciding the employee did not come under Civil Service, held, after citing many cases from other jurisdictions, that open, competitive and free examinations were the very heart of Civil Service; and that the fundamental principle of Civil Service is that appointments to City employment must be according to merit and fitness and this must be ascertained by competitive examinations. We are of the opinion the reasoning of the Holcombe case is sound and is applicable to the case before us.

■ In applying the basic rule of interpretation of statutes and ordinances, that is, to determine the intent of the City Commission in passing the Civil Service ordinance and approving the Personnel Rules, we are convinced the record does not establish that Dawson was a classified permanent employee of the City. We are of the opinion such requirements as open, competitive and free examinations, the maximum age of 50 years, and entry into a probationary period are mandatory. The fact Dawson was employed under the section dealing with "special assignments" and on a "seasonal" basis makes clearer the intention of those charged with administering the Civil Service program. We therefore conclude Dawson has totally failed to place himself under the Civil Service program and his employment was therefore properly terminated without cause by the department head. In our opinion no official action in this case was ever taken by the Civil Service Commission. Appellant's first five points of error are therefore overruled.

Being convinced Dawson did not become a classified employee and therefore did not attain the status of a Civil Service employee, the other points of error become im-

material. A discussion of these points, which include the retroactive effect of the "seasonal" employment section of the Personnel Rules; the validity of the Civil Service Commission ruling; proper procedure for appealing from the commission's action; and the question of the statute of limitations and laches, is deemed unnecessary.

Having examined all of the appellant's points of error, we conclude no reversible error is presented. The judgment of the trial court is affirmed.