**Roland HELDT et al., Appellants,**

v.

**SOUTHWESTERN BELL TELEPHONE COMPANY, Appellee.**

**No. 707.**

Court of Civil Appeals of Texas, Corpus Christi.

May 25, 1972.

Rehearing Denied June 29, 1972.

Fulbright, Crooker & Jaworski, J. Rufus Wallingford, Houston, for appellants.

Urban, Coolridge, Pennington & Scott, Charles M. Bardwell, Houston, for appellee.

## OPINION

SHARPE, Justice.

This appeal is from a judgment rendered after non-jury trial in favor of appellee against appellants for $1,851.00.

This suit was instituted by appellee, Southwestern Bell Telephone Company against Roland Heldt, Agnes Marie Heldt and Martha L. Heldt, individually and doing business as Heldt Bros. Trucking Company, appellants, for damages caused when appellants' truck struck an overhanging telephone line owned by appellee in Wharton, Texas. The trial judge filed 23 findings of fact and 6 conclusions of law.

Appellants assert six points of error reading as follows:

### "POINT ONE

The trial court erred in entering judgment against the appellants because the evidence shows as a matter of law, that the appellee was guilty of negligence proximately causing the incident in question.

### POINT TWO

The finding of the trial court (express or implied) that the actions of the appellee in maintaining its line at a height of less than 18 feet was not negligence and a proximate cause of the incident made the basis of suit is wholly against the great weight and preponderance of the evidence and so clearly wrong as to be manifestly unjust.

### POINT THREE

The trial court erred in entering judgment against appellants because the evidence shows, as a matter of law, that appellee was in violation of the ordinances of the City of Wharton.

### POINT FOUR

The trial court erred in entering judgment against appellants because the court's findings that the City of Wharton's electrical ordinances with respect to ground clearances did not apply to appellee were against the great weight and preponderance of the evidence and so clearly wrong as to be manifestly unjust.

### POINT FIVE

The trial court erred in entering judgment against appellants because there was no competent, properly admissible evidence before the court concerning the reasonableness of the value of the repairs made by the appellee to the cable.

### POINT SIX

The trial court erred in admitting the testimony of the appellee's witness, K. D. Glenn, concerning the value of repairs because said testimony was hearsay and, absent such testimony, there is no evidence before the court concerning the value of the repairs made by the appellee to the cable."

The trial judge made findings of fact and conclusions of law which establish that appellants were liable to appellee in connection with the incident in question, and these are not questioned on this appeal. However, appellants assert in substance that the trial court erred in failing to find that appellee was contributorily negligent; and in failing to find that appellee was in violation of an ordinance of the City of Wharton, and that for such reasons appellee's recovery was barred. Additionally, appellants contend that the trial court erred in permitting the witness Glenn to give hearsay testimony concerning the reasonable and necessary repairs involved and there was no competent evidence in such respect. We have concluded that appellants' points of error are without

merit and that the judgment should be affirmed.

Under appellants' first two points they contend that the evidence shows as a matter of law that appellee was guilty of negligence proximately causing the incident in question; and that the finding of the court (express or implied) that appellee's maintaining its line at a height less than 18 feet was not negligence and a proximate cause is against the great weight and preponderance of the evidence and so clearly wrong as to be manifestly unjust.

The record reflects that on July 7, 1967 appellants' truck came into contact with appellee's overhead cable at the intersection of Highway 59 and New Caney Street within the city limits of Wharton, Texas. Appellants' truck was carrying a substructure which was part of a drilling rig. Only one eye-witness to the accident was called by appellee. He was Mr. J. F. Caldwell, the owner of a Mobil Service Station located on the southwest corner of the intersection. Caldwell testified that a pipe or "nipple" extended above the load on the truck and came into contact with the telephone cable, at which time the pipe protruded about six inches above the cable. He indicated that the pipe was sticking up about four feet above the load.

The record also reflects that Mr. Alonzo Menking, appellants' safety director, testified in substance that after the incident in question he made measurements using an identical load and trailer and found that the overall height of the vehicle was 15 feet 9 inches with the standpipe down and 16 feet 6 inches with the standpipe up. It is conceded that appellants did not have a permit from the State Highway Department for movement over the highways of Texas of a load in excess of 13 feet, 6 inches, as is required by law.

The evidence concerning the height of the telephone cable was furnished by Mr. K. D. Glenn, exchange engineer for appellee, who testified in substance that from his calculations the lowest point in the cable would be in excess of seventeen feet six inches above roadway. Mr. Glenn also said that appellee at the time of the accident tried to maintain a reasonable height of clearance from the roadway, which would be in the neighborhood of eighteen feet.

Article 1416, Vernon's Ann.Civ.St., provides as follows:

"Corporations created for the purpose of constructing and maintaining magnetic telegraph lines, are authorized to set their poles, piers, abutments, wires and other fixtures along, upon and across any of the public roads, streets and waters of this State, in such manner as not to incommode the public in the use of such roads, streets and waters. Acts 1874, p. 132; G.L. vol. 8, p. 134."

That article applies to telephone as well as telegraph lines. City of Brownwood v. Brown Telegraph & Telephone Co., 106 Tex. 114, 157 S.W. 1163 (1913).

The trial court found "That the telephone cables damaged in said collision owned and maintained by SOUTHWESTERN BELL TELEPHONE COMPANY were placed in such a manner as not to incommode the public.", and "That said cables had been in the same location without incidents since 1951." The trial court concluded that "The aerial cables of Plaintiff, SOUTHWESTERN BELL TELEPHONE COMPANY, were lawfully located."

Upon the record presented here we cannot hold that the evidence shows as a matter of law that appellee was guilty of negligence proximately causing the incident in question. Nor can we hold that findings to the effect that appellee's maintenance of its line at a height of less than 18 feet did not constitute negligence and proximate cause of the incident here involved are against the great weight and preponderance of the evidence. Appellants' points one and two are overruled.

Appellants' points three and four basically involve their contention that the evi-

dence shows as a matter of law that appellee was in violation of the ordinances of the City of Wharton and that the trial court findings to the effect that the City of Wharton's electrical ordinances concerning ground clearances were inapplicable to appellee were against the great weight and preponderance of the evidence. The trial court found that "The City of Wharton Electrical Ordinances do not apply to SOUTHWESTERN BELL TELEPHONE COMPANY."

The record reflects that Southwestern Bell Telephone Company is a long-lines telephone company. Appellee erected the poles and the aerial cable at the location of the accident in question in 1951. The identical poles are still standing and the height of the cable had not been changed since that date. On December 8, 1964, the City of Wharton enacted certain electrical ordinances which appear in the record as Defendants' Exhibit 5.

Appellee, under the authority of Article 1416, V.A.C.S., is authorized to erect its poles, wires and other fixtures along, upon and across any public roads, streets and waters of Texas, subject only to the restriction that same must be done in a manner as not to incommode the public in the use of such roads, streets and waters. This is a right granted by the State which cannot be denied by a municipality or city. Moreover, the trial court specifically found (which finding has not been challenged by appellants) that appellee's poles and cables, lawfully in place at the time in question, were located in such a manner as not to incommode the public.

The ordinance relied on by appellants was enacted by the City of Wharton to regulate electrical apparatus, poles, and wiring and does not in any manner purport to regulate telephone or communication companies or their fixtures. Nor does it regulate or attempt to regulate the height above ground of communication or signal lines. The only time signal wires are mentioned (Section 8, Paragraph Y) in the or-

dinance is in an exclusionary manner, i. e., that electrical lines wherever expedient, shall not be carried on the same pole as signal wires, and in the event that they are, the electrical lines must be not less than forty inches above such signal wire. The first paragraph of Section 9 specifically exempts the Telephone Company from the necessity of obtaining a permit for the installation, maintenance or alteration of wiring, apparatus, etc., for telegraph, telephone, signal service or central station protective service used in conveying signals of intelligence. Thus it does not appear that the ordinance is regulative of the Telephone Company or the height above ground at which its signal lines must be placed. The ordinance as a whole negates appellants' contention that it is applicable to appellee.

Even if it should be found that the cited section of the ordinance relating to "pole line construction" applies to appellee, the method of construction and erection of Telephone Company poles is not in question. The only matter which appellants seek to bring under this specific sentence relates to the height of the signal wires above the ground. How the poles were constructed or erected, the height above ground, depth below ground, or their composition, cannot be construed as effecting the height of aerial cables placed thereon and is the only issue on which the cited provision of the ordinance could possibly bear, if considered applicable. It further appears that even if this Court should determine that the ordinance is applicable here and further that "the pole line construction" in some way applies to the height signal wire should be above ground, the evidence fails to show that appellee was in violation thereof.

It is well settled that the same rules of construction apply in municipal ordinances as apply to statutes, Dawson v. City of Amarillo, 355 S.W.2d 827 (Tex. Civ.App., Amarillo, 1962, writ ref'd n. r. e.) and cases cited therein. Furthermore, it is equally settled that a statute shall have

only a prospective operation unless its terms shall clearly show a legislative intention that it shall have a retroactive effect. This has been the law in Texas since first stated by Justice Stayton speaking for the Texas Supreme Court in the case of Mellinger v. City of Houston, 68 Tex. 37, 3 S. W. 249 (1887). The basis for this being Article 1, Section 16, prohibiting ex post facto and retroactive laws. Acting under the authority granted it by the State of Texas, appellee lawfully erected and maintained its poles and cables at the location in question for 13 years prior to the enactment of the electrical ordinance relied on by appellants. We are unwilling to hold that the ordinance in question applies to appellee retroactively or at all on the record here presented. Appellants' points three and four are overruled.

By their points five and six the appellants contend in substance that there was no competent, proper admissible evidence before the court concerning the reasonableness of the value of the repairs made by appellee to its cable, and that the trial court erred in admitting the testimony of K. D. Glenn, appellee's witness, concerning the value of repairs because such testimony was hearsay, and absent the same there was no evidence concerning the value of repairs to appellee's cable. The trial court found that the reasonable and necessary cost to repair the damage to appellee's aerial cables was $1851.00, and after such repair the cables were in no better condition than immediately prior to the collision in question.

█ The testimony concerning the value of repairs to appellee's cable was given by Mr. K. D. Glenn who was district engineer for appellee in the Wharton area. It was stipulated that appellee's cable which stretched over U. S. Highway 59 was severed by the collision with appellants' truck. Mr. Glenn had been in the engineering department of appellee Telephone Company for more than twenty years. He testified that he had the custody of the records of appellee pertaining to aerial cables and

poles; that the records were made at or near the time of the transaction in question; that they were part of the permanent records of appellee under his supervision and control; and that they were accurate representations. Mr. Glenn was subjected to extensive direct and cross-examination and some voir dire examination concerning the cost of the repairs to the cable here involved. Mr. Glenn also testified, among other things, that it was one of his duties to prepare a damage or cost report; that his records reflected how much it cost to make the repairs in question; that appellee had an accountant or accountant group using standard procedures which determines such cost based on man hours, cost of cable and cost of connectors; that such costs were periodically forwarded to the engineers in various districts; that he had such a report in connection with the incident in question. Ultimately, Mr. Glenn was permitted to testify that the amount of damage in this case was $1851.00. He said that he was furnished a manual by the accounting department, which was continuously updated, showing cost figures, which manual was furnished to all the engineers for Telephone Company use. Mr. Glenn reiterated that the actual cost figures were determined by him by use of the book and other things.

The relevant law governing the admissibility of business records in Texas is found in Article 3737e, V.A.C.S. Section 1 sets forth the criteria to be met, e. g., records made in the regular course of business. Section 2 thereof sets forth the manner in which the criteria may be established. This section specifically states that the identity and mode of preparation of the memorandum may be proved by the testimony of the custodian of such record. The record reflects here that Mr. Glenn was the custodian of these records and that they were records of the Telephone Company. We believe that appellants' objections went to the weight rather than to the admissibility of the testimony given by Mr. Glenn and that the evidence given by him was admissible. See Texas Practice, Vol.

358

2, Texas Law of Evidence, McCormick and Ray, Section 1255, pages 118–120. The evidence was legally sufficient to support the trial court finding of $1851.00 as the reasonable cost of repairs to appellee's cable. Appellants' points five and six are overruled.

The judgment of the trial court is affirmed.