United States Court of Appeals
Fifth Circuit

**F I L E D**

**September 19, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 02-50825

---

SOUTHWESTERN BELL TELEPHONE COMPANY,

Plaintiff-Appellant,

versus

CITY OF EL PASO; ET AL,

Defendants,

EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1,

Defendant-Appellee.

---

No. 02-50899

---

SOUTHWESTERN BELL TELEPHONE COMPANY,

Plaintiff-Appellee,

versus

CITY OF EL PASO; ET AL,

Defendants,

EL PASO COUNTY WATER IMPROVEMENT DISTRICT NO. 1,

Defendant-Appellant.

---

Appeals from the United States District Court
for the Western District of Texas

---

Before JOLLY, HIGGINBOTHAM, and STEWART, Circuit Judges.

HIGGINBOTHAM, Circuit Judge:

Southwestern Bell Telephone Co. ("SWBT") brought a suit under 42 U.S.C. § 1983 for declaratory and injunctive relief against the City of El Paso and El Paso County Water Improvement District No. 1 ("EPCWID"), claiming that EPCWID's application process and fees for the use of its facilities constituted an illegal taking in violation of the Fifth Amendment as well as the Contract Clause of the Constitution, and a violation of the Federal Telecommunications Act of 1996 ("FTA").[1]  SWBT also alleged that EPCWID's actions violated state law, particularly Texas Utility Code § 181.082.  The district court granted summary judgment in favor of SWBT, but denied its request for attorney's fees pursuant to 42 U.S.C. § 1988.  We affirm the grant of summary judgment in favor of SWBT, but reverse the district court's denial of attorney's fees.  We therefore remand the case to the district court for a determination of reasonable attorney's fees pursuant to § 1988.

I.

SWBT is a provider of telecommunications services and holds a certificate of convenience and necessity issued by the Public Utility Commission of Texas ("PUC").  EPCWID is a water district operating under Article XVI, Section 59, of the Texas Constitution. At the center of the controversy between SWBT and EPCWID is a

---

[1] 47 U.S.C. §§ 151, *et seq.*  The City and SWBT have settled their claims, leaving only EPCWID in the case.

series of irrigation canals, laterals and ditches deeded from the United States Bureau of Reclamation to EPCWID in January 1996. Development in the area of EPCWID's facilities has resulted in a number of roads being built across the facilities and has also resulted in an increase in the demand for telephone services.

EPCWID established application procedures for entities wanting to cross its facilities, including the completion of an application, payment of an application fee of $500, and the obtaining of a survey at the applicant's expense. Before the survey is ordered, EPCWID's Board of Directors must preliminarily approve the application. After the survey is completed, if the application is approved, the Board assesses an ad hoc charge for the crossing, based on the length of the crossing to be used and the nature of the applicant.

SWBT has placed its lines and cables across EPCWID's facilities without submitting to EPCWID's application process. The current dispute arose when SWBT began laying a new fiber optic cable along Texas State Highway 20, crossing one of EPCWID's facilities. EPCWID threatened to arrest the line crews for trespass and remove the cables there and elsewhere if SWBT did not comply with EPCWID's application process and pay a fee for use of EPCWID's facilities.

SWBT sought declaratory relief against EPCWID, arguing that (1) EPCWID's application fees violate the FTA and state law; (2) roads and highways crossing EPCWID's ditches, laterals, and canals

3

are public roadways; (3) EPCWID has no right to charge for telephone lines crossing its canals, ditches and laterals when those lines are within the rights-of-ways of public roadways; (4) the water flowing through EPCWID's canals and ditches is public; and (5) EPCWID has no right to charge for telephone lines crossing public waters. EPCWID filed a counterclaim, alleging that SWBT has trespassed on its property.

EPCWID and SWBT moved for summary judgment, and EPCWID requested leave to file a second amended counterclaim. The district court denied EPCWID's motion for leave to amend. Following a stay for an interlocutory appeal of EPCWID's Eleventh Amendment defense,[2] the district court granted summary judgment in favor of SWBT and denied EPCWID's motion for summary judgment on its counterclaims. Following entry of judgment, SWBT filed a motion for attorney's fees and EPCWID moved to alter or amend the judgment. The court denied both motions, and SWBT appeals the denial of attorney's fees. EPCWID cross-appeals the grant of summary judgment in favor of SWBT, the denial of its summary judgment motion, and the denial of its motion to alter or amend the judgment.

II.

---

[2] EPCWID sought dismissal of SWBT's claims on the ground that, as an arm of the State, it was entitled to Eleventh Amendment immunity. The district court denied the motion to dismiss, and we affirmed. *Southwestern Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 940 (5th Cir. 2001).

4

A.

We begin by addressing EPCWID's assertion that the district court abused its discretion by not giving the parties ten days notice prior to taking the summary judgment motions under consideration, a notice it argues is required by Rule 56(c)[3].

We rejected that argument in *Jackson v. Widnall*.[4] There we stated:

> Rule 56(c) merely requires the court to give the non-movant an adequate opportunity to respond prior to a ruling. We have previously rejected [this] very argument, noting that rule 56(c) requires neither an oral hearing nor advance notice of a "date certain" on which a motion for summary judgment is to be decided; instead, "if there is not a hearing, the adverse party must have at least ten days to respond to the motion for summary judgment."[5]

The local rules of the Western District of Texas, the ones at issue here, satisfy the notice requirements of Rule 56(c) by requiring that a response to a summary judgment motion be filed within a specified period of time.[6] Here, EPCWID filed a response, which it

---

[3] Fed. R. Civ. P. 56(c) provides in part, "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits."

[4] 99 F.3d 710, 713 (5th Cir. 1996).

[5] *Id.* (quoting *Daniels v. Morris*, 746 F.2d 271, 274-75 (5th Cir. 1984)).

[6] *Rodriguez v. Pacificare of Tex., Inc.*, 980 F.2d 1014, 1020 (5th Cir. 1993); *see also* W.D. Tex. R. CV-7(e) and (g) (requiring a response to a motion to be filed within eleven days, and providing that oral argument is at the sole discretion of the court).

had ample opportunity to supplement before the court ruled. The court delayed consideration of the motions, but there is no evidence that it lulled EPCWID into prejudicial inaction, and this delay is not enough to warrant a finding of an abuse of discretion.[7]

## B.

We next turn to EPCWID's assertion that the district court abused its discretion in refusing to allow EPCWID to amend its pleadings for a third time to include additional counterclaims including breach of contract. The district court found undue delay on the part of EPCWID, noting "discovery has closed, the deadline provided in the scheduling order for amending pleadings has passed, and this case is set for trial on August 14. Additionally, [EPCWID] has twice previously amended its answer. Finally, the raising of new counterclaims at this late date would prejudice [SWBT]."

We review the district court's denial of leave to amend for abuse of discretion.[8] We recently stated that:

---

[7] *See Daniels*, 746 F.2d at 275-76 (stating that, "[w]hen, as here, the parties have been given ample opportunity to respond to the motion for summary judgment, the district judge may rule on it *even after a significant delay*, without giving the parties advance notice," and distinguishing cases where the court induced the parties into thinking the case was going to trial from those where the court merely waited to consider the motion (emphasis added)).

[8] *S & W Enters., LLC v. Southtrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003).

6

> Federal Rule of Civil Procedure 16(b) governs amendment of pleadings once a scheduling order has been issued by the district court. Rule 16(b) provides that a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge." The good cause standard requires the "party seeking relief to show that the deadlines cannot reasonably be met despite the diligence of the party needing the extension."[9]

Thus, EPCWID must show good cause for not meeting the deadline before the more liberal standard of Rule 15(a) will apply to the district court's denial of leave to amend.[10]

In determining good cause, we consider four factors: "(1) the explanation for the failure to timely move for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice."[11] The district court previously extended the deadline and allowed EPCWID to twice amend its pleadings to add counterclaims. EPCWID was aware of the contract that forms the basis of its proposed amendment months in advance of the deadline and does not offer a satisfactory explanation for its delay in seeking leave to amend. When combined with the prejudice to SWBT in allowing untimely additional counterclaims, and the likely failure of the proposed counterclaims on the merits, we find that

---

[9] *Id.* (quoting 6A Charles Alan Wright et al., Federal Practice and Procedure § 1522.1 (2d ed. 1990)).

[10] *Id.* at 536.

[11] *Id.* (internal quotation marks omitted).

7

the court did not abuse its "broad discretion to preserve the integrity and purpose of the pretrial order."[12]

### C.

EPCWID asserts that the district court erred in granting SWBT's motion for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[13] We review a grant of summary judgment *de novo*, applying the same standards as did the district court.[14]

SWBT moved for summary judgment, relying on both state and federal law, and requested that the district court declare

> Southwestern Bell's right under Texas and federal law to use the roads and cross the waters controlled by EPCWID. Further, the Court should also declare that EPCWID has no authority under the Texas Water Code or the Texas constitution provision to which it owes its existence to charge the general public for crossing over its waters....

We begin by considering SWBT's argument that Texas Utilities Code § 181.082 authorizes SWBT to cross EPCWID's facilities without submitting to EPCWID's application process and paying EPCWID a fee for the crossing. Section 181.082 reads: "A telephone or telegraph

---

[12] *Id.* at 535 (internal quotation marks omitted).

[13] Fed. R. Civ. P. 56(c).

[14] *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1119 (5th Cir. 1998).

8

corporation may install a facility of the corporation along, on, or across a public road, a public street, or public water in a manner that does not inconvenience the public in the use of the road, street, or water."[15]

At the outset, we find no merit in EPCWID's contention that the word "public" makes the statute unconstitutionally vague. The statute has been applied in various forms by Texas courts since it was first enacted in 1874, and it is not the case that more than one-hundred years of pronouncements from the state courts have left it unconstitutionally vague.

EPCWID argued to the trial court that § 181.082 does not apply because none of the roads crossing its facilities are public roads. EPCWID reasoned that the roads were constructed across its facilities when they were controlled by the United States government pursuant to a fifty-year license agreement between the United States and the City of El Paso. That agreement did not dedicate the land for public use, and therefore EPCWID contends that although the roads are used by the public on a daily basis, they are not "public" within the meaning of § 181.082.

We will address this contention only briefly, as did EPCWID. The streets of El Paso, as well as the other roads within the district constructed by the various governments for public use, are "public" within the meaning of § 181.082, even where they cross

---

[15] Tex. Util. Code Ann. § 181.082 (Vernon 2003).

over EPCWID's facilities.  Whether EPCWID has the power to remove the crossings at the expiration of the lease is irrelevant.  The roadways are public, and § 181.082 applies.

It is well established in Texas law that § 181.082 and its predecessor statutes grant telephone companies broad powers to install their lines within the rights-of-ways of public roads, and that local governments cannot deny this right.[16]  EPCWID argues that even if § 181.082 allows SWBT's crossings within the rights-of-ways of public roads, nothing in § 181.082 prohibits EPCWID from managing its facilities by requiring SWBT to comply with reasonable regulations and pay a reasonable fee to compensate EPCWID for the use of its property.

In *Harlingen Irrigation District Cameron County No. 1 v. Caprock Communications Corp.*, a Texas State appellate court addressed a similar argument.[17]  There, Caprock obtained permits from the Texas Department of Transportation to install underground fiber-optic cables along several roads that crossed or were parallel to the irrigation district's facilities.  The irrigation district insisted that Caprock pay a fee for crossing its property,

---

[16] *See Harlingen Irrigation Dist. Cameron County No. 1 v. Caprock Communications Corp.*, 49 S.W.3d 520, 531 (Tex. App.--Corpus Christi 2001, pet. denied); *Southwestern Bell Tel. Co. v. Bigler*, 563 S.W.2d 851, 853 (Tex. Civ. App.--San Antonio 1978, no writ); *Heldt v. Southwestern Bell Tel. Co.*, 482 S.W.2d 352, 356 (Tex. Civ. App.--Corpus Christi 1972, no writ); *City of Brownwood v. Brown Tel. & Tel. Co.*, 157 S.W. 1163, 1165 (Tex. 1913).

[17] 49 S.W.3d 520.

10

and institute additional measures to minimize the impact the cable would have on its operations.[18] The court rejected the irrigation district's argument that § 181.082 did not apply because the easements granted to the county were limited to construction and maintenance of a road, not the installation of utilities. The court stated that the grant of a right-of-way for roadway purposes "includes the attendant public purposes of transportation of persons and property, communication, and travel. Roadway easements include the use of the subsurface for sewers, pipelines and other methods of transmission and communication that serve the public interest."[19] The *Caprock* court concluded that § 181.082 applied,[20] and that any restriction on the Department of Transportation's ability to permit the use of the roads for installation of communications facilities "interferes with the state's freedom to devote the roadways to the wants and convenience of the public":[21]

> The public policy favoring the use of public roads for communications facilities is as relevant today as it was in the early part of the twentieth century. The construction of new housing and new roads requires the construction of new telephone lines. Roads serving the public in areas of growth will inevitably cross stretches of property owned, or held by easement, by a variety of public utilities and entities similar to HID. If each of these utilities is able to impose restrictions on the

---

[18] *Id.* at 524.

[19] *Id.* at 527 (citations omitted).

[20] *Id.* at 531.

[21] *Id.* at 532.

11

> construction of facilities along public roads, the extension of telephone service to areas of new construction would be greatly hampered. This is contrary to the policy of encouraging access to means of communication, such as telephone service.[22]

We find this reasoning persuasive, and agree that it is contrary to the policy of § 181.082 to allow EPCWID to regulate or charge a fee for SWBT's facilities that are within the rights-of-ways of public roads.

### D.

The district court also held that in the alternative, the waters within EPCWID's facilities are public waters, and thus SWBT was entitled pursuant to § 181.082 to install its cables across and along them. EPCWID argues that this holding is in error, first, because the waters are not public, and second, because the district court failed to address EPCWID's claim that it can place reasonable restrictions on the use of its property and charge a reasonable fee for such use. This alternative basis is in fact much broader than simply allowing SWBT to utilize the rights-of-ways of public roads to cross EPCWID's facilities since it would allow SWBT to cross EPCWID's property at any point. Given that the summary judgment evidence before the court concerns only cables laid within the

---

[22] *Id.* at 533 (citing *City of Brownwood v. Brown Tel. & Tel. Co.*, 157 S.W. 1163, 1165 (Tex. 1913); *Roaring Springs Town-Site Co. v. Paducah Tel. Co.*, 212 S.W. 147, 149 (Tex. 1919); *Southwestern Bell Tel. Co. v. Bigler*, 563 S.W.2d 851, 853 (Tex. Civ. App.--San Antonio 1978, no writ)).

rights-of-ways of public roads,[23] and the fact that there is no guidance from the state courts on this difficult issue, we decline to address this alternative basis to sustain the summary judgment. Because state law provides an adequate basis for deciding the issue, we also decline to consider SWBT's contention that the Federal Telecommunications Act,[24] prohibits EPCWID's actions, or that EPCWID's actions violate SWBT's property and contract rights under the United States Constitution.[25]

## E.

EPCWID also argues that the district court erred in denying its motion to alter or amend the judgment based on the denial of permission to file an amended pleading. Because the district court did not abuse its discretion in denying leave to amend to add the

---

[23] The district court stated that the parties seemed to be in agreement that the cables were installed along roadways constructed or maintained by city or state governments for public use. SWBT's amended complaint describes the dispute as arising out of a crossing within the right-of-way of Texas Highway 20. EPCWID's summary judgment evidence does not indicate where the cables are installed, stating only that SWBT has "made use of the rights-of-ways of EPCWID."

[24] 47 U.S.C. § 253(a) and (c).

[25] EPCWID also contends that the district court erred in rejecting its contention that SWBT was liable for trespass on EPCWID's property. SWBT's entry onto EPCWID's property is authorized by § 181.082 where it is within the right-of-way of a public road. EPCWID has presented no evidence of entry onto its property other than an affidavit which states that SWBT has "made use of the rights-of-ways of EPCWID." This is not evidence of unauthorized entry, and therefore there is no evidence of trespass. *See Nugent v. Pilgrim's Pride Corp.*, 30 S.W.3d 562, 575 (Tex. App.--Texarkana 2000, pet. denied) (stating that trespass is the unauthorized and intentional entry upon land).

13

counterclaim for breach of contract, the district court did not abuse its discretion in refusing to amend the judgment based on the counterclaim which was not before the court.[26]

### III.

The final issue is SWBT's claim that the district court erred in denying its motion for attorney's fees under 42 U.S.C. § 1988 or, alternatively, Texas Civil Practice and Remedies Code § 37.009 based on SWBT's successful Texas state-law claims for declaratory relief. We review a denial of attorney's fees for abuse of discretion.[27] The district court's underlying findings of fact are subject to review for clear error and its conclusions of law are reviewed *de novo*.[28]

The district court denied SWBT's motion for attorney's fees pursuant to § 1988[29] because "[SWBT] was not granted any relief pursuant to 42 U.S.C. § 1983 in the Court's [summary judgment] order and judgment. Therefore, the Court finds that attorney's

---

[26] *See S. Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993) (stating that abuse of discretion standard applies).

[27] *See Dean v. Riser*, 240 F.3d 505, 507 (5th Cir. 2001); *Auclair v. Sher*, 63 F.3d 407, 410 (5th Cir. 1995).

[28] *Id.*

[29] 42 U.S.C. § 1988 provides in relevant part: "In any action or proceeding to enforce a provision of [section 1983], the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs...."

14

fees are not warranted...." The district court accepted the contention that because SWBT prevailed on its state law claims, it was not the prevailing party under §§ 1983 and 1988. This view is supported by logic, but not our case law.

In *Scham v. District Courts Trying Criminal Cases*, a criminal defense attorney, challenged a state court order prohibiting the Harris County district court and sheriff from disclosing the street addresses or telephone numbers of criminal defendants until the defendant retained counsel.[30] Scham sued under § 1983, alleging a violation of his First and Fourteenth Amendment rights, and sought an injunction prohibiting enforcement of the order. He also brought a supplemental state law claim for violation of the Texas Open Records Act.[31]

The district court granted summary judgment in favor of Scham, holding that the defendants did not have authority under Texas state law to issue the order, and specifically avoided ruling on Scham's § 1983 claims.[32] Scham sought attorney's fees pursuant to § 1988, which the district court denied, and Scham appealed.[33] The appellees argued that because the district court granted summary judgment on a narrow state law ground, Scham did not succeed on any

---

[30] 148 F.3d 554, 556 (5th Cir. 1998).

[31] *Id.*

[32] *Id.*

[33] *Id.*

federal claim and therefore was not a prevailing party for the purposes of § 1988.[34] We rejected this argument, stating, "we have previously held that a plaintiff may be deemed a prevailing party if he prevails on a supplemental state law claim which arises from a common nucleus of fact with his federal constitutional claims, if the court chooses to avoid ruling on the constitutional issues."[35]

In *Williams v. Thomas*, a county jail inmate sued under § 1983, alleging that deputies imposed cruel and unusual punishment upon him and deprived him of his liberty without due process of law by grabbing him and slamming him against the wall and floor of the Dallas County jail.[36] In an amended complaint, Williams added a state assault and battery action pursuant to the court's supplemental jurisdiction, and sought recovery of attorney's fees under § 1988.[37] The district court entered judgment based on the state law claims. We affirmed Williams' recovery of damages under the state law claims, and did not address the alleged errors regarding the denial of a "good faith" defense to the § 1983 claims.[38] We then affirmed the district court's grant of attorney's fees pursuant to § 1988, stating:

---

[34] *Id.* at 557.

[35] *Id.* (citing *Williams v. Thomas*, 692 F.2d 1032, 1036 (5th Cir. 1982)).

[36] 692 F.2d at 1033.

[37] *Id.*

[38] *Id.* at 1035.

16

In *Maher v. Gagne*, [448 U.S. 122 (1980)], the Supreme Court intimated that a party prevailing on a substantial claim that is pendent to a civil rights claim is entitled to a recovery of attorney's fees when the civil rights claim and the pendent claim arise out of a common nucleus of operative facts. This Circuit, along with other circuits, has followed the Supreme Court's direction. These cases demonstrate that the federal courts are aware of the fact that often a court will affirm a judgment on a pendent, noncivil rights claim when to do so will allow it to avoid an unnecessary decision on a difficult constitutional issue.[39]

Thus, under our precedent attorney's fees may be awarded even if the § 1983 claim is not decided, "provided that 1) the § 1983 claim of constitutional deprivation was substantial; and 2) the successful pendant claims arose out of a 'common nucleus of operative facts.'"[40] A claim is substantial if it supports federal question jurisdiction, and the "common nucleus of operative facts" element must satisfy the test established in *United Mine Workers v. Gibbs* for pendent jurisdiction.[41]

---

[39] *Id.* at 1036 (citing *Gibbs v. Town of Frisco City, Ala.*, 626 F.2d 1218 (5th Cir. 1980); *Lund v. Affleck*, 587 F.2d 75, 76-77 (1st Cir. 1978); *Seals v. Quarterly County Court*, 562 F.2d 390, 393-94 (6th Cir. 1977); *Bond v. Stanton*, 555 F.2d 172, 174 (7th Cir. 1977); *Kimbrough v. Ark. Activities Ass'n*, 574 F.2d 423, 426 (8th Cir. 1978) (citations omitted)). Since deciding *Williams*, we have cited its holding numerous times. *See,* e.g., Scham *v. District Courts Trying Criminal Cases*, 148 F.3d 554, 557 (5th Cir. 1998); *Rodriguez v. Handy*, 873 F.2d 814, 817 (5th Cir. 1989); *Heath v. Brown*, 807 F.2d 1229, 1233 (5th Cir. 1987); *McDonald v. Doe*, 748 F.2d 1055, 1057 (5th Cir. 1984); *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983).

[40] *Rodriguez*, 873 F.2d at 817 (quoting *Williams*, 692 F.2d at 1036).

[41] *See Espino v. Besteiro*, 708 F.2d 1002, 1009-10 (5th Cir. 1983) (citing *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966)).

SWBT grounded its § 1983 claim on a violation of the Federal Telecommunications Act and violations of the Takings and Contracts Clauses of the United States Constitution. We here affirm the grant of summary judgment based on state law, declining to decide whether EPCWID's practices also violate federal law under § 1983. To qualify as a prevailing party, "the plaintiff must (1) obtain actual relief, such as an enforceable judgment or a consent decree; (2) that materially alters the legal relationship between the parties; and (3) modifies the defendant's behavior in a way that directly benefits the plaintiff at the time of the judgment or settlement."[42] SWBT is the prevailing party. It is also clear that SWBT prevailed under § 1983, since SWBT stated a § 1983 claim substantial enough to support federal question jurisdiction,[43] and the state law claims arise out of the same facts as the § 1983 claims.

EPCWID argues that a violation of the FTA cannot be the basis for a § 1983 action, and therefore SWBT did not prevail under §

---

[42] *Walker v. City of Mesquite*, 313 F.3d 246, 249 (5th Cir. 2002) (citing *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992)).

[43] We have stated that "[t]he substantiality test merely requires that the issue raised in the fee claim not be 'wholly insubstantial,' 'obviously frivolous,' 'plainly insubstantial' or 'obviously without merit.'" *Espino v. Besteiro*, 708 F.2d 1002, 1010 (5th Cir. 1983) (quoting *Hagans v. Levine*, 415 U.S. 528, 537 (1974)).

1983.[44]  We need not decide whether the FTA supports a claim under § 1983 to find that SWBT was a prevailing party for the purposes of § 1988.  Our precedent is clear that if SWBT states a § 1983 claim based on the alleged violation of constitutional rights that supports federal question jurisdiction, that is sufficient to support the award of attorney's fees, even if the constitutional claim is avoided by the court.  It is not necessary for SWBT to prevail on the constitutional claim.[45]  Because we find that SWBT is eligible for attorney's fees under § 1988, we do not address SWBT's alternative basis for fees under Texas law.

## IV.

We AFFIRM in part, REVERSE in part, and REMAND, for a determination of reasonable attorney's fees pursuant to § 1988.

---

[44] *Compare, e.g.*, *AT&T Wireless PCS, Inc. v. City of Atlanta*, 210 F.3d 1324-30 (11th Cir. 2000) (finding a remedy under § 1983 for a violation of the plaintiff's rights under the FTA), *vacated for lack of jurisdiction*, 223 F.3d 1324 (11th Cir. 2000), *reinstated*, 250 F.3d 1307 (11th Cir. 2001), *and appeal dismissed on settlement*, 264 F.3d 1314 (11th Cir. 2001); *Omnipoint Holdings, Inc. v. Town of Westford*, 206 F. Supp. 2d 166, 173-74 (D. Mass. 2002) (same), *with, e.g.*, *Nextel Partners Inc. v. Kingston Township*, 286 F.3d 687, 693-96 (3d Cir. 2002) (holding that an alleged violation of FTA does not provide a basis for a § 1983 claim).

[45] *See McDonald v. Doe*, 748 F.2d 1055, 1056 (5th Cir. 1984); *Espino*, 708 F.2d at 1009-10.  We do not decide whether prevailing under a state law supplemental claim would support an award of attorney's fees under § 1988 if the § 1983 claim sought only enforcement of a federal statute.