

KEN PAXTON

ATTORNEY GENERAL OF TEXAS

September 15, 2025

The Honorable Fred H. Weber
Caldwell County Criminal District Attorney
1703 South Colorado Street, Box #5
Lockhart, Texas 78644

> **Opinion No. KP-0499**
>
> Re: Scope of county authority and liability involving utility cables buried along rights-of-way (RQ-0573-KP)

Dear Mr. Weber:

At the request of the Caldwell County Judge, you ask several questions about the scope of county authority and liability when a utility buries cable in county rights-of-way.[1] Your first two questions ask whether a county may (1) require a utility to seek a permit from the county before burying cable in the rights-of-way of county roads, or (2) "specify and enforce a minimum depth requirement" for burial of such a cable. Request Letter at 1. If not, you then ask "what party bears the cost for repair and reburial of a cable disturbed and/or cut by the County in upgrading and improving County roads." *Id.* at 2. You tell us your questions are prompted by AT&T's position regarding Section 181.082 of the Texas Utilities Code. *Id.* at 1; *see also* TEX. UTIL. CODE § 181.082. Accordingly, we limit this opinion to a corporation subject to that section.

**Section 181.082 of the Texas Utilities Code grants telegraph and telephone corporations broad powers to install their facilities within public road rights-of-way.**

Chapter 181 of the Utilities Code addresses the miscellaneous powers and duties of a variety of utilities. TEX. UTIL. CODE §§ 181.001–.903. Subchapter E applies to telephone and telegraph corporations. *Id.* §§ 181.081–.089; *see also id.* § 181.081(2)–(3) (defining "telegraph corporation" and "telephone corporation"). Within that subchapter, section 181.082 provides that "[a] telephone or telegraph corporation may install a facility of the corporation along, on, or across a public road, a public street, or public water in a manner that does not inconvenience the public in the use of the road, street, or water." *Id.* § 181.082. Texas courts have interpreted this provision to authorize a corporation to install facilities underground. *See, e.g.*, *Harlingen Irrigation Dist. Cameron Cnty. No. 1 v. Caprock Commc'ns Corp.*, 49 S.W.3d 520, 531 (Tex. App.—Corpus Christi 2001, pet. denied) (concluding a telecommunication company was entitled to install fiber

---

[1] *See* Letter from Hon. Fred H. Weber, Caldwell Cnty. Crim. Dist. Att'y, to Off. of the Tex. Att'y Gen., Op. Comm. at 1–2 (Nov. 14, 2024), https://www.texasattorneygeneral.gov/sites/default/files/request-files/request/2024/RQ0573KP.pdf ("Request Letter").

optic cable underground along public rights-of-way). The term "'[f]acility' means a pole, pier, abutment, wire, or other fixture related to a telephone or magnetic telegraph line." TEX. UTIL. CODE § 181.081(1).

Section 181.082 expresses "the public policy of encouraging the construction of communication systems." *Harlingen Irrigation*, 49 S.W.3d at 533. This policy "favor[s] the use of public roads for communications facilities" as "construction of new housing and new roads requires the construction of new telephone lines." *Id.* If various entities are able "to impose restrictions on the construction of facilities along public roads, the extension of telephone service to areas of new construction would be greatly hampered." *Id.* Section 181.082 thus "grant[s] telephone companies broad powers to install their lines within the rights-of-ways of public roads" and "local governments cannot deny this right." *Sw. Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 548 (5th Cir. 2003).

This right is not, however, "without limits." *See Harlingen Irrigation*, 49 S.W.3d at 531. Section 181.082 expressly prohibits the installation of a facility in a manner that "inconvenience[s] the public in the use of the road." TEX. UTIL. CODE § 181.082; *see also Sw. Bell Tel., L.P. v. Harris Cnty. Toll Rd. Auth.*, 282 S.W.3d 59, 63 (Tex. 2009) (explaining the use of roads by utilities to lay lines is subservient to the main purpose of the road, which is travel and transportation). Courts have further recognized that an installation may be subject to reasonable regulations of a governmental entity. *See Harlingen Irrigation*, 49 S.W.3d at 531; *Sw. Bell Tel. Co. v. Bigler*, 563 S.W.2d 851, 853 (Tex. App.—San Antonio 1978, no writ); *see also, e.g.*, *State v. City of Austin*, 331 S.W.2d 737, 741 (Tex. 1960) ("While public utilities may use [roads and streets] for laying their lines, such use is subject to reasonable regulation by either the state, the county or the city, as the case may be."); 43 TEX. ADMIN. CODE §§ 21.32 (prescribing "the minimum requirements for the accommodation, method, materials, and location for the installation, adjustment, and maintenance of utility facilities within the right of way of the state highway system"), .37(a) (requiring utility facility design to "be accomplished in a manner and to a standard acceptable to the" Texas Department of Transportation).

Your first two questions concern whether a county has authority to adopt regulations governing a telephone or telegraph corporation's installation of a facility in county road rights-of-way. Request Letter at 1. A county commissioners court may exercise those powers expressly given by either the Texas Constitution or the Legislature, together with implied powers necessary to carry out its express duties. *See* TEX. CONST. art. V, § 18(b); *City of San Antonio v. City of Boerne*, 111 S.W.3d 22, 28 (Tex. 2003). Because state law vests counties with a variety of authorities, we consider the law you reference—Chapter 181 of the Utilities Code—in assessing whether a county has the regulatory powers about which you ask.

**Chapter 181 of the Utilities Code does not authorize a county to impose permitting or minimum-depth requirements on a telephone or telegraph corporation that buries cable in a county road right-of-way.**

The "purpose in construing a statute is to determine the Legislature's intent." *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 706 (Tex. 2002). "We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully

omitting words not chosen." *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011). "And if a statute is unambiguous, we adopt the interpretation supported by its plain language unless such an interpretation would lead to absurd results." *Id.*

Chapter 181 grants counties various authorities. In relevant part, counties may supervise the installation or designate the appropriate location of certain utility facilities in the rights-of-way for public roads. *See* TEX. UTIL. CODE §§ 181.024 (relating to gas utilities), .044 (relating to electric utilities), .103 (relating to cable lines); *see also, e.g.,* TEX. LOC. GOV'T CODE § 552.104(b)–(c) (relating to water lines); TEX. NAT. RES. CODE § 111.020(b)(3) (relating to pipeline, telegraph, and telephone lines installed by common carriers). Both sections 181.044 and 181.103, for example, require particular entities proposing to construct or install certain equipment in county road rights-of-way give the commissioners court advance notice of the proposal and authorize a commissioners court to designate the location where equipment may be constructed or installed. TEX. UTIL. CODE §§ 181.044 (pertaining to an electric utility's line), .103 (pertaining to community antenna or cable television providers installing equipment). Likewise, counties may require that some entities relocate facilities and equipment installed in rights-of-way when the county undertakes certain road improvements. *See, e.g.*, TEX. UTIL. CODE §§ 181.025(b) (relating to gas facilities), .046(b) (relating to electric lines), .104(b) (relating to cable). Yet none of the foregoing authorizes a county to adopt permitting or minimum-depth regulations for telegraph and telephone corporations. To be sure, *municipalities* are expressly authorized to adopt regulations governing such corporations—including those relating to the "location of [their] facilities." *Id.* § 181.089(a)(1). But nothing in Chapter 181 authorizes a *county* to do so. *Id.* §§ 181.001–.903.

At bottom, Chapter 181 does not authorize a county to impose permitting or minimum-depth requirements on a telephone or telegraph corporation that buries cable in county road rights-of-way. *See also, e.g.*, Tex. Att'y Gen. Op. Nos. JM-489 (1986) at 2 ("We are not aware of any statute that gives a county the power to condition or limit the right of a telephone company to lay its cables within the right-of-way of a county[] . . . ."), H-1015 (1977) at 2 (examining predecessor statute and concluding "a telephone company is authorized to lay buried telephone lines within the right-of-way of a county road without the approval of the commissioners court").

**A county would not be liable for the costs to repair and rebury a telephone or telegraph corporation's cable, under the Texas Tort Claims Act, unless property damage is proximately caused by the wrongful act, omission, or negligence of a county employee arising from motor-driven vehicles or equipment.**

Your final question asks "what party bears the cost for repair and reburial of a cable disturbed and/or cut by the County in upgrading and improving County roads." Request Letter at 2. We understand your concern to be whether a county could be liable for the costs when a telephone or telegraph corporation's facility must be repaired or reburied because it is disturbed or cut while upgrading and improving a county road. Under the doctrine of governmental immunity, of course, political subdivisions "are not liable for the negligence of their employees absent a constitutional or statutory waiver of immunity." *CKJ Trucking, L.P. v. City of Honey Grove*, 581 S.W.3d 870, 875 (Tex. App.—Dallas 2019, pet. denied). With certain exceptions, the Underground Facility Damage Prevention and Safety Act requires "a person who intends to excavate" to "notify a notification center" which in turn allows an underground facility operator an opportunity to

"mark the approximate location of its underground facilities" prior to the excavation. TEX. UTIL. CODE §§ 251.151(a), .157(a). But this statute contains "no waiver of liability for any failure to provide proper notice" before excavating. *City of Houston v. Sw. Bell Tel. Co.*, No. 01-16-00734-CV, 2017 WL 3262131, at *6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op.).

Instead, the Texas Torts Claim Act ("Act") would likely govern in the scenario you raise. *See generally* TEX. CIV. PRAC. & REM. CODE §§ 101.001–.109. The Act waives immunity under specific circumstances and permits a person to sue state or local governments for specified damages. *See id.* § 101.025(a)–(b); *see also* TEX. GOV'T CODE § 311.005 (defining "[p]erson" to include a "corporation, organization, government or governmental subdivision or agency, business trust, estate, trust, partnership, association, and any other legal entity"). Relevant here, the Act does not waive the immunity of a county for property damage unless it is "proximately caused by the wrongful act or omission or the negligence of an employee" who is "acting within his scope of employment" so long as "the property damage[] . . . arises from the operation or use of a motor-driven vehicle or motor-driven equipment" and "the employee would be personally liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(1).

Claims like that referenced in your request typically turn on negligence. *See, e.g.*, *City of Monahans v. Sw. Bell Tel. Co.*, 656 S.W.3d 738, 748 (Tex. App.—El Paso 2022, no pet.). To prove negligence under the Act, of course, a claimant must among other things "establish the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach." *City of Houston*, 2017 WL 3262131, at *3. A breach of duty may occur where "a party that makes 'an extraordinary use of the surface,' such as breaking up a portion of a road and excavating underneath it," fails to "make a reasonable inquiry as to the location of, and to avoid striking, underground utilities." *Id.* at *4 (citing *Pioneer Nat. Gas Co. v. K & M Paving Co.*, 374 S.W.2d 214, 223 (Tex. 1963)). Two elements—cause in fact and foreseeability—must be considered in determining whether a "governmental employee's use or operation of the vehicle or equipment proximately caused the relevant [damage]." *Rattray v. City of Brownsville*, 662 S.W.3d 860, 874 (Tex. 2023). The Act does not define damages, and courts therefore interpret the term consistent with its plain meaning: "[m]oney claimed by, or ordered to be paid to, a person as compensation for loss or injury." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 287 (Tex. 2022) (alteration in original) (quoting BLACK'S LAW DICTIONARY (11th ed. 2019)). But we are aware of no precedent that concludes merely disturbing a buried cable, without more, would meet this definition. *Cf., e.g.*, *City of Taylor v. Lab'y Tops, Inc.*, No. 03–08–00357–CV, 2008 WL 5423037, at *2–3 (Tex. App.—Austin Dec. 31, 2008, no pet.) (mem. op.) (involving claim that prolonged exposure of a pipe proximately caused the ensuing property damage).

Ultimately, however, any purported liability of a county for alleged property damage turns on questions of fact that are beyond the scope of the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0430 (2006) at 4.

# **S U M M A R Y**

While Chapter 181 of the Texas Utilities Code authorizes counties to supervise the installation or designate the appropriate location of certain utility facilities in the rights-of-way for public roads, this chapter does not authorize a county to impose permitting or minimum-depth requirements on a telephone or telegraph corporation that buries cable in a county road right-of-way.

A county would not be liable for the costs to repair and rebury a telephone or telegraph corporation's cable, under the Texas Tort Claims Act, unless property damage is proximately caused by the wrongful act, omission, or negligence of a county employee and it arises from the operation or use of motor-driven vehicles or equipment. That determination, however, is a fact question beyond the scope of this opinion.

Very truly yours,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

JOSHUA C. FIVESON
Chair, Opinion Committee

CHRISTY DRAKE-ADAMS
Assistant Attorney General, Opinion Committee